*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0250P (6th Cir.)
File Name: 02a0250p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CARLOS D. GOAD and
ROBERT J. WUCHICH,
     *Plaintiffs-Appellants,*

     *v.*

BETTY MITCHELL, JACQUI
VISINTINE, and M. A.
GILBERT,
     *Defendants-Appellees.*

No. 00-4245

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-00727—Ann Aldrich, District Judge.

Argued and Submitted: January 23, 2002

Decided and Filed: July 25, 2002

Before: BOGGS and MOORE, Circuit Judges; RUSSELL,*
District Judge.

_____

*The Honorable Thomas B. Russell, United States District Judge for
the Western District of Kentucky, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:** Jack W. Decker, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellees.  **ON BRIEF:** Alan S. Belkin, ALAN BELKIN COMPANY, Cleveland, Ohio, for Appellants.  Jack W. Decker, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

**OPINION**
_____

KAREN NELSON MOORE, Circuit Judge.  Plaintiffs-Appellants Carlos D. Goad and Robert J. Wuchich appeal the district court's grant of Defendants-Appellees' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Goad and Wuchich, former Corrections Officers at the Mansfield Correctional Institution, filed a complaint against Defendants-Appellees, officers of the Institution, alleging retaliatory action based on the exercise of Goad and Wuchich's First Amendment right to free speech in violation of 42 U.S.C. § 1983.  For the following reasons, we **REVERSE** the district court's grant of Defendants-Appellees' motion to dismiss, and we **REMAND** for proceedings consistent with this opinion.

## I.  BACKGROUND

Plaintiffs-Appellants Carlos D. Goad and Robert J. Wuchich ("plaintiffs") were employed as Corrections Officers in the mental health unit at the Mansfield Correctional Institution ("MANCI") in Mansfield, Ohio.  On March 26, 1999, they filed a complaint in the United States District Court for the Northern District of Ohio pursuant to 42 U.S.C. § 1983, alleging that Betty Mitchell, the Warden at MANCI, Jacqui Visintine, a Labor Relations Officer at MANCI, and M. A. Gilbert, an Ohio State Highway Patrol Trooper assigned to MANCI, ("defendants") had retaliated against

them in violation of their First and Fourteenth Amendment rights.[1] On April 30, 1999, the defendants filed an answer to the complaint, raising the affirmative defense of qualified immunity, and on May 28, 1999, the defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Stating that "[b]ecause their complaint fails to specify the content, context, and timing of their allegedly protected activities, this Court cannot assess whether the plaintiffs would be able to overcome the defense of qualified immunity," the district court on April 5, 2000 denied the defendants' motion for judgment on the pleadings and ordered the plaintiffs to file a more specific amended complaint. Joint Appendix ("J.A.") at 17 (Mem. and Order).

On April 28, 2000, the plaintiffs filed an amended complaint. The amended complaint listed eight instances of speech by the plaintiffs allegedly protected by the First Amendment; however, on appeal, the plaintiffs concede that six of the eight instances of speech are not constitutionally protected. Appellants' Br. at 9. The two remaining instances of speech were described in the amended complaint as follows:

b.    On a yearly basis monitors appeared at the MANCI mental health unit to assess compliance with a consent decree. In both 1996 and 1997 Goad and Wuchich told these monitors that MANCI mental health officials were not conducting group sessions with inmates as required in the consent decree but that these MANCI mental health officials were

---

[1]After listing a number of "adverse actions" taken against the plaintiffs by the defendants, the complaint stated only that "Mitchell, Visintine, and Gilbert engaged in the aforedescribed conduct toward Goad and Wuchich in retaliation against actions by Goad and Wuchich in the areas of organized labor and expression. . . . . More specifically [such action] related to working conditions of and treatment of MANCI Corrections Officers and relationships between employees of various administrative departments at MANCI." Joint Appendix ("J.A.") at 8-9 (Compl.).

preparing false and inaccurate documents to reflect full compliance with the consent decree;

. . .

h.  Goad and Wuchich reported on multiple occasions that nurses in the mental health unit left medications unattended and neglected to remove keys from the locks of cell doors.

J.A. at 21-22 (Amended Compl.).  After listing the instances of allegedly protected speech, the plaintiffs' amended complaint stated that "[b]eginning on or about April 15, 1998 and continuing to the present, Mitchell, Visintine and Gilbert, acting individually and in concert with one another have taken adverse and punitive actions against Goad and Wuchich in retaliation for the actions of Goad and Wuchich described above."  J.A. at 23.  According to the plaintiffs, such action included:

a.  The initiation and pursuit by Mitchell and Visintine of improper and unwarranted disciplinary proceedings against Goad and Wuchich;

b.  Mitchell, Visintine and Gilbert coerced MANCI employees to give false statements against Wuchich and Goad in order to substantiate disciplinary measures taken against Goad and Wuchich, and

c.  Visintine and Gilbert filed improper criminal charges against Goad and Wuchich, and

d.  Mitchell, Visintine and Gilbert openly disparaged Goad and Wuchich to other MANCI employees.

J.A. at 23.  On May 17, 2000, the defendants moved to dismiss the plaintiffs' amended complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

On September 19, 2000, the district court entered an order granting the defendants' motion to dismiss on the ground that

standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.").  We also emphasize that the "specific, nonconclusory allegations of fact" that plaintiffs may be required to assert to establish improper motive need not constitute direct evidence of improper motive.  In *Thaddeus-X v. Blatter*, we held that improper motive in a retaliation claim could be demonstrated by circumstantial evidence. *Thaddeus-X v. Blatter*, 175 F.3d 378, 399-400 (6th Cir. 1999) (en banc).  Because the plaintiff should not have to allege more facts to survive a motion to dismiss than he would need to allege and support to survive a motion for summary judgment, district courts must accept as specific, nonconclusory allegations of fact those allegations that provide circumstantial evidence of improper intent. *See, e.g., Trulock*, 275 F.3d at 405 (facts that show circumstantial evidence of improper intent sufficient to survive dismissal in retaliation claim).

## C.  Dismissal for Failure to State a Claim

The district court in this case relied on *Veney v. Hogan* in granting the defendant's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  *Veney* is no longer good law after the Supreme Court's decisions in *Crawford-El* and *Swierkiewicz*.  Therefore, we must reverse the order of the district court granting the defendants' motion to dismiss.

### III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of the defendants' motion to dismiss, and we **REMAND** for proceedings consistent with this opinion.

Thus, although *Crawford-El* invalidates *Veney*'s circuit-created heightened pleading requirement, *Crawford-El* permits *district courts* to require plaintiffs to produce specific, nonconclusory factual allegations of improper motive before discovery in cases in which the plaintiff must prove wrongful motive and in which the defendant raises the affirmative defense of qualified immunity. We emphasize, however, that the Supreme Court in *Crawford-El* was motivated by the particular problem raised by the conjunction of constitutional claims that require proof of improper motive and the doctrine of qualified immunity, which is "an entitlement not to stand trial or face the other burdens of litigation." *See Saucier*, 121 S. Ct. at 2156 (quoting *Mitchell v. Forsyth*, 472 U.S. 511 526 (1985)). We therefore do not believe that district courts should require plaintiffs to produce specific, nonconclusory factual allegations of improper motive in cases in which improper motive is not at issue or in which qualified immunity cannot be raised as an affirmative defense. In other cases, "summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." *Crawford-El*, 523 U.S. at 600[7]; *see also Swierkiewicz v. Sorema*, 122 S. Ct. 992, 998 (2002) ("[the] notice pleading

---

*Crawford-El*, 523 U.S. at 600-01.

However, we agree with the First Circuit that the Court's dicta in *Crawford-El* looks like a heightened pleading requirement. Although we believe that the Supreme Court in *Crawford-El* clearly rejected *circuit-created* heightened pleading requirements, we note that there is still tension between the Court's endorsement of the notice pleading system delineated in Federal Rules of Civil Procedure 8(a) and 9(b) in *Swierkiewicz*, *Crawford-El*, and *Leatherman* and the Court's dicta in *Crawford-El*. In fact, the language the *Crawford-El* Court quoted from Justice Kennedy's concurrence in *Siegert v. Gilley* regarding "specific, nonconclusory factual allegations" refers to a heightened pleading requirement, which, Justice Kennedy explained, "is a departure from the usual pleading requirements of Federal Rules of Civil Procedure 8 and 9(b) . . . ." *Siegert v. Gilley*, 500 U.S. 226, 235-36 (1991) (Kennedy, J., concurring).

[7]The *Crawford-El* Court noted that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El*, 523 U.S. at 598.

---

the defendants were protected from the plaintiffs' suit by qualified immunity. Relying on *Veney v. Hogan*, 70 F.3d 917 (6th Cir. 1995), the district court held that the plaintiffs failed to allege sufficient facts to satisfy the heightened pleading requirement that applies when defendants raise the affirmative defense of qualified immunity; even if all the facts alleged in the complaint were true, the plaintiffs would not be able to demonstrate that their constitutional rights had been violated by the defendants. In order to make a prima facie case of unconstitutional retaliation under the First Amendment, "a plaintiff must demonstrate (1) that [he] was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Strouss v. Michigan Dep't of Corr.*, 250 F.3d 336, 345 (6th Cir. 2001). The district court found that seven of the eight instances of speech listed in the plaintiffs' amended complaint lacked constitutional protection. And although the district court agreed with the plaintiffs that reporting MANCI's failure to comply with a consent decree to outside monitors would constitute constitutionally protected speech, the court concluded that the plaintiffs still would not be able to demonstrate that their constitutional rights were violated because they did not allege any facts linking the protected speech to the adverse action taken by MANCI officials against them. Goad and Wuchich filed a timely appeal.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001). In reviewing a Rule 12(b)(6) motion to dismiss, we treat all well-pleaded allegations in the complaint as true, and we will find dismissal proper only "if it appears beyond doubt that the

plaintiff can prove no set of facts in support of its claims that would entitle it to relief[.]" *Id*. (quotation omitted).

## B. Qualified Immunity and Heightened Pleading Requirements

In civil suits for money damages, government officials are entitled to qualified immunity for discretionary acts that do "not violate clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether particular defendants are entitled to qualified immunity is a question to be resolved at the earliest possible stage of litigation. *Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001). To determine if qualified immunity attaches, the Supreme Court has delineated a two-part, sequential analysis. *Id*. at 2156-57. First, we inquire whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id*. at 2156. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*.

In *Veney v. Hogan*, 70 F.3d 917 (6th Cir. 1995), this court held that because qualified immunity is a "threshold" question for the district court, "[t]he trial court need not deny a defendant the right to qualified immunity simply because a complaint adequately alleges violation of clearly established law. Rather, a plaintiff must allege sufficient facts 'to create a genuine issue as to whether the defendant in fact committed those acts.'" *Veney*, 70 F.3d at 920 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Under *Veney*, if a defendant raises the affirmative defense of qualified immunity, the plaintiff is required to respond to that defense by providing "specific, non-conclusory allegations of fact that

its discretion so that officials are not subject to unnecessary and burdensome discovery or trial proceedings." *Id*. at 597-98. In such cases, the Court explained that district courts "may order a reply to the defendant's or a third party's answer under Federal Rule of Civil Procedure 7(a), or grant the defendant's motion for a more definite statement under Rule 12(e). Thus, the court may insist that the plaintiff 'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." *Id*. at 598 (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring)). The Court went on to say that the above options exist even if the defendant does not raise the affirmative defense of qualified immunity, and that "if the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery. To do so, the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law." *Id*.[6]

---

[6] In *Judge*, the First Circuit interpreted this discussion of the ability of district courts "to require that plaintiffs allege *specific facts supporting an allegation of wrongful motive*" prior to discovery to validate the First Circuit's heightened pleading requirement. *Judge*, 160 F.3d at 74 (emphasis in original). We respectfully disagree. Instead, we believe, as the Tenth Circuit noted in *Currier*, that "the Court in *Crawford-El* was careful to distinguish between the D.C. Circuit's solution to protect government officials from insubstantial claims, which it rejected, and the options otherwise available under the Federal Rules of Civil Procedure for *federal trial judges* to deal with this concern." *Currier*, 242 F.3d at 915 (emphasis in original); *see also Rippy*, 270 F.3d at 426-27 (Gilman, J., concurring) (distinguishing between "Circuit-created" rules of heightened pleading and the options available to district courts to "weed out unmeritorious claims" pursuant to the Federal Rules of Civil Procedure). As the Court itself noted:

> It is the district court judges rather than appellate judges like ourselves who have had the most experience in managing cases in which an official's intent is an element. Given the wide variety of civil rights and "constitutional tort" claims that trial judges confront, broad discretion in the management of the factfinding process may be more useful and equitable to all the parties than the categorical rule imposed by the Court of Appeals.

court-fashioned pleading requirements not contained in the Federal Rules of Civil Procedure." *Rippy*, 270 F.3d at 426 (Gilman, J., concurring). We agree. Although the Supreme Court in *Crawford-El* only ruled on the validity of the D.C. Circuit's heightened burden of proof for plaintiffs making constitutional claims against government officials that involve improper motive, the Court explicitly stated that it was generally addressing "whether the courts of appeals may craft special procedural rules for such cases." *Crawford-El*, 523 U.S. at 577; *see also Currier*, 242 F.3d at 916 ("the manner in which the Court framed the 'broad' question presented for appeal . . . suggests that the Court's ruling is not limited to the D.C. Circuit's heightened burden of proof"). The Court's reasoning in holding that neither its qualified immunity jurisprudence nor the Federal Rules of Civil Procedure permit the imposition of a heightened burden of proof applies equally to *Veney*'s heightened pleading requirement.[5] We therefore hold that the Supreme Court's opinion in *Crawford-El* invalidates the heightened pleading requirement this circuit enunciated in *Veney v. Hogan* for civil rights plaintiffs in cases in which the defendant raises the affirmative defense of qualified immunity.

The Supreme Court in *Crawford-El* did, however, reiterate that in cases in which qualified immunity is raised as an affirmative defense, "'firm application of the Federal Rules of Civil Procedure is fully warranted' and may lead to the prompt disposition of insubstantial claims." *Crawford-El*, 523 U.S. at 597 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819-20 (1982)). The Court further stated that "[w]hen a plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. It must exercise

---

[5] In fact, in support of its rejection of the heightened burden of proof in *Crawford-El*, the Court cited two cases in which it had rejected heightened pleading requirements. *Crawford-El*, 523 U.S. at 595; *see also Swierkiewicz*, 122 S. Ct. at 992 (rejecting heightened pleading standards in Title VII and age discrimination case).

will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." *Id*. at 922. "If this pleading burden is not carried by plaintiff in either the original complaint or by a pleading in response to defendant's assertion of the qualified immunity defense, dismissal is proper." *Id*. at 921. Because Federal Rule of Civil Procedure 8(a) only requires that a pleading set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," the decision in *Veney* imposed a heightened pleading requirement on civil rights plaintiffs in cases in which the defendant raised the affirmative defense of qualified immunity.

After this circuit decided *Veney*, the Supreme Court decided *Crawford-El v. Britton*, 523 U.S. 574 (1998). In *Crawford-El*, the Court held that a requirement of the D.C. Circuit that plaintiffs accusing government officials of unconstitutional motive prove such motive by clear and convincing evidence in order to defeat a motion for summary judgment was not supported by the Court's qualified immunity jurisprudence and did not accord with the Federal Rules of Civil Procedure. Although the Court specifically addressed a heightened burden of proof, it noted at the outset of the opinion that: "The broad question presented [was] whether the courts of appeals may craft special procedural rules for such cases to protect public servants from the burdens of trial and discovery that may impair the performance of their official duties." *Crawford-El*, 523 U.S. at 577-78. The Court recognized that the D.C. Circuit's requirement was that court's attempt "to address a potentially serious problem: Because an official's state of mind is easy to allege and hard to disprove, insubstantial claims that turn on improper intent may be less amenable to summary disposition than other types of claims against government officials." *Id*. at 584-85 (quotation omitted). However, the Court held that its qualified immunity jurisprudence "provides no support for making any change in the nature of the plaintiff's burden of proving a constitutional violation," *id*. at 589, and that "[t]he unprecedented change made by the Court of Appeals in this case . . . alters the cause of action itself in a way that undermines the very purpose of

§ 1983 — to provide a remedy for the violation of federal rights." *Id*. at 594-95. The Court noted that it had "consistently declined similar invitations to revise established rules that are separate from the qualified immunity defense." *Id*. at 595.[2] And the Court concluded that "our cases demonstrate that questions regarding pleading, discovery, and summary judgment are most frequently and most effectively resolved either by the rulemaking process or the legislative process." *Id*. (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993)).[3]

Since the Supreme Court's decision in *Crawford-El*, other circuits have held that *Crawford-El* invalidates heightened pleading requirements for civil rights plaintiffs in cases in which the defendant raises the affirmative defense of qualified immunity. *See Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001) ("there is no heightened pleading standard in qualified immunity cases"); *Currier v. Doran*, 242 F.3d 905, 916 (10th Cir.), *cert. denied*, 122 S. Ct. 543 (2001) ("We conclude that this court's heightened pleading requirement cannot survive *Crawford-El*."); *Harbury v. Deutch*, 233 F.3d 596, 610 (D.C. Cir. 2000), *rev'd on other grounds sub nom. Christopher v. Harbury*, 122 S. Ct. 2179 (2002) ("plaintiffs making constitutional claims based on improper motive need not meet

---

[2]The Court cited two cases in which it refused to change the Federal Rules governing pleading: *Gomez v. Toledo*, 446 U.S. 635, 639-40 (1980), in which the Court rejected a requirement of the First Circuit that plaintiffs anticipate the defense of qualified immunity; and *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164-69 (1993), in which the Court rejected a requirement of the Fifth Circuit that plaintiffs plead with greater specificity in cases alleging municipal liability. *Crawford-El*, 523 U.S. at 595.

[3]The Supreme Court reiterated this view in its recent decision in *Swierkiewicz v. Sorema*, 122 S. Ct. 992 (2002). In that case, the Court invalidated the Second Circuit's heightened pleading requirement for Title VII plaintiffs. *Id*. at 999. The Court held that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case." *Id*. at 997.

any special heightened pleading standard"); *but cf. Judge v. City of Lowell*, 160 F.3d 67, 73 (1st Cir. 1998) (holding that the First Circuit's heightened pleading requirement as applied in a case involving improper motive survived *Crawford-El*). This court has mentioned *Crawford-El* and its impact on the heightened pleading requirement delineated in *Veney* in a few published cases, but we have yet to resolve what effect *Crawford-El* had on *Veney*'s heightened pleading requirement.[4] We do so here. We conclude that the Supreme Court's decision in *Crawford-El* invalidates the heightened pleading requirement that we enunciated in *Veney*. *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

In *Rippy v. Hattaway*, 270 F.3d 416 (6th Cir. 2001), Judge Gilman concluded that "I do not believe that the pleading standard outlined in *Veney* is the correct rule to apply now that the Supreme Court has expressed its disagreement with

---

[4]In *Kain v. Nesbitt*, 156 F.3d 669 (6th Cir. 1998), a summary judgment case, a panel of this court cited *Veney* and then noted in dicta that "[the heightened pleading requirement enunciated in *Veney*] is not to be confused with a heightened proof requirement which was condemned by the Supreme Court in *Crawford-El* . . . ." *Kain*, 156 F.3d at 672 n.4. But in *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999), also a summary judgment case, a majority of the en banc court stated in dicta that "*Crawford-El* disallows any type of 'heightened pleading standard' . . . ." *Thaddeus-X*, 175 F.3d at 399. Finally, in *Rippy v. Hattaway*, 270 F.3d 416 (6th Cir. 2001), a case in which the plaintiff's claim was dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), the issue was directly addressed, but, as the panel was equally divided, the issue remains unresolved. In *Rippy*, Judge Beckwith, writing the lead opinion, concluded that "[t]he Supreme Court's decision in *Crawford-El* . . . did not alter the requirements identified in *Veney* . . . ." *Rippy*, 270 F.3d at 424 n.3. Judge Gilman, however, wrote separately because he came to the opposite conclusion: "I believe that *Crawford-El* invalidated this Sixth Circuit-created rule of heightened pleading." *Id*. at 427 (Gilman, J., concurring). Judge Boggs, in dissent, did not address the issue.